UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NICOLE CABALLERO,

      Plaintiff,

v.                                  Case No.:  6:17-cv-00319-GAP-KRS

US POSTAL SOLUTIONS INC.,

      Defendant.

_____/

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AND
INCORPORATED MEMORANDUM OF LAW**

      The Parties, through their undersigned counsel, jointly move for Court approval of the mutually agreed-upon terms of settlement in this action.  In further support hereof, the Parties state as follows:

      1.      Plaintiff filed the instant lawsuit on January 24, 2017.

      2.      The Putative Class/Collective action Complaint alleges that Defendant misclassified Plaintiff as exempt employees under the FLSA.

      3.      The Complaint further alleges that, as a result of the misclassification, Defendant failed to pay Plaintiff time-and-one-half for hours worked over forty in a work week.

      4.      The Complaint includes three Counts: Count I – FLSA Overtime Violation; Count II – Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"); and, finally, Count III – Violation of 26 U.S.C. § 7434(a), which provides a civil remedy for the filing of false information returns with the IRS.

      5.      Defendant denies that Plaintiff was misclassified and that Plaintiff is owed overtime compensation.  Specifically, Defendant contends that Plaintiff at all times was an

independent contractor (rather than an employee) of US Mail delivery Group, Inc. ("USMDG") and that Defendant had no relationship, contractual or otherwise, with the Defendant.  As a result, Defendant also contends that it could not have and did not violate either FDUPA or 26 U.S.C. § 7434(a) as Plaintiff was properly classified as a 1099 independent contractor and, thus, it could not have "willfully" violated 26 U.S.C. § 7434(a), nor did it engage in unfair or deceptive practices in violation of FDUPTA.

6.      The 17-page Complaint was out for service with a process server when the undersigned was contacted by counsel for Defendant sometime during mid-March, 2017.

7.      During that initial contact, Defendant's counsel raised a number of issues with Plaintiff's counsel, including as to the naming of the wrong party as defendant, the number of hours allegedly worked by Plaintiff (all were tracked by the Plaintiff and provided by the Plaintiff to USMDG), and the unique position and nature of Plaintiff's contractual relationship with USMDG, which, according to the information provided, would likely preclude either collective or class treatment.

8.      Furthermore, counsel for Defendant planned to raise a number of affirmative defenses to Plaintiff's overtime claims, some of which would deal with the "good faith" affirmative defense available to FLSA defendants, meaning any failure by Defendant to comply with the FLSA and/or to pay Plaintiff the full compensation to which she was entitled was committed in good faith and that Defendant had reasonable grounds for believing that such acts or omissions were not a violation of FLSA.  This would have been especially important here because of Defendant's position on Plaintiff's classification as an independent contractor rather than an employee.

9.      Defendant's "good faith" defense became central to the negotiations in this case because, even if Plaintiff were to prevailed, liquidated damages would not be available if Defendant established its good-faith defense.

10.     Based on the payroll documentation in Defendant's possession, conversation between counsel explaining *how* Defendant paid Plaintiff, and the undersigned's analysis, Plaintiff's counsel determined that it would be difficult to recover liquidated damages in this case.

11.     Thus, at least from Plaintiff's perspective, it was the undersigned's goal to recover as much of the "hard" damages as possible.

12.     That goal was achieved as Plaintiff recovered under the agreement a total of $7,000 in compensation, in excess of the **full** amount Plaintiff's counsel calculated Plaintiff could potentially be owed (not including liquidated damages) for her disputed overtime claim. In exchange for full payment of her asserted damages, Plaintiff agreed to drop and/or release her remaining FDUPTA and IRS claims.

13.     To avoid the risks and unknowns, as well as the costs of protracted litigation, the Parties desire to fully and finally resolve this action with prejudice, as to all counts, claims, and parties.  After a full review of the facts and information, the Parties, who have been represented by experienced counsel at all times, agree that the negotiated terms of the settlement represent are both fair and reasonable.

14.     Additionally, the parties have agreed Defendant will pay Plaintiff's counsel $4,000 in fees and costs (which includes the filing fee).  Plaintiff's counsel's fees and costs were discussed entirely separately from Plaintiff's recovery.

15.     Based upon the facts and authority cited herein, this Motion should be granted, the Settlement Agreement attached hereto as Exhibit "A" should be approved, and the case should be dismissed with prejudice.

## MEMORANDUM OF LAW

Parties are required to seek court approval of a private settlement of a claim for back wages arising under the FLSA.  The Eleventh Circuit has held that:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees.  First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . .  The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations.  When employees bring private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

In determining whether the settlement is fair and reasonable the Court should consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.  *See Leverso v. South Trust Bank of Ala., Nat. Assoc.,* 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).  A strong presumption exists to find a settlement fair and reasonable.  *See Hamilton v. Frito-Lay, Inc.*, 2007 WL 219981 at *2 (M.D. Fla. Jan. 26, 2007).

As to the first fact, Plaintiff was represented by counsel experienced in FLSA matters for the entirety of this litigation and Plaintiff agrees that the amount to be paid to her is fair.

62W692302.DOCX

Therefore, the Parties represent that no fraud or collusion is present with regards to this settlement.

As to the second and third factors, the complexity, expense, and length of future litigation, and the stage of the proceedings and discovery completed also favor this settlement. While settlement was reached early on in the litigation, continuing the litigation would only subject the Parties to the possibility of experiencing the greatest expense of the litigation process, a trial.  At this juncture, the Parties agree that avoiding the large cost of proceeding with this litigation through settlement is in the best interest of both Parties, particularly in light of the recovery amount achieved by Plaintiff.

The Parties agree that factors 4 and 5, which look at the likelihood of Plaintiff prevailing at trial and the possible range of recovery, are in dispute.   Considering the evidence and potential outcomes, counsel for both parties agree that the settlement amount is fair and reasonable.

In this case, the Parties reached an agreement and settlement amount that was the result of an arm's-length adversarial negotiations process.  The Parties agree that the settlement reached between them represents a fair and reasonable resolution to the Plaintiff's claims for damages brought under the FLSA.  The Parties also believe that the amount to be paid for attorney's fees and costs, which was negotiated separately, is reasonable.  *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

In sum, the Parties agree that the attached settlement agreement includes every term and condition of the Parties' agreement related to Plaintiff's claims.  The Parties also agree that the settlement reached advances judicial economy and should be approved by the Court.

**CONCLUSION**

The Court should approve the settlement of this action.  The settlement sum fairly balances the amounts Plaintiff would seek at trial against the risk that Plaintiff might recover nothing if the case were to proceed.  Additionally, Plaintiff's counsel will receive a reasonable fee in connection with the settlement and reimbursement of an already-paid filing fee as a cost. All factors germane to the Court's consideration of the fairness of the settlement weigh in favor of approval.

**WHEREFORE**, the Parties respectfully request that this Honorable Court (i) GRANT this Motion; (ii) APPROVE the settlement of this matter; and (iii) ENTER an Order dismissing this case with prejudice.

DATED this 12th day of April, 2017.  Respectfully submitted,

| | |
|---|---|
| **WENZEL, FENTON, CABASSA, P.A.** | **BUSH ROSS, P.A.** |
| 110 N. Florida Avenue, Suite 300 | 1801 North Highland Ave |
| Tampa, FL  33602 | Tampa, Florida 33602 |
| Telephone: (813) 337-7992 | T: 813.204.6427 |
| Facsimile: (813) 229-8712 | F: 813.223.9620 |
| Counsel for Plaintiff | Counsel for Defendant |
| | |
| By:   /s/ Brandon J. Hill | By:   /s/ Adam Lawton Alpert |
| Brandon J. Hill | Adam Lawton Alpert |
| Florida Bar No. 37061 | Florida Bar No. 0490857 |
| bhill@wfclaw.com | aalpert@bushross.com |

62W692302.DOCX

# EXHIBIT "A"

DocuSign Envelope ID: 0ZAEDB58-DE8B-408C-8C06-661C61BEE428

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

The Settlement Agreement and General Release ("Agreement") is entered into by and between US Postal Solutions, Inc. (hereinafter referred to as "US Postal" or "the Company"), US Mail Delivery Group, Inc. ("USMDG"), and Nicole Caballero ("Caballero"). The Company, USMDG, and Caballero are collectively referred to herein as "Parties."

## RECITALS

WHEREAS, the Parties desire to fully, completely, and finally resolve any and all disputes and disagreements arising from or relating to Caballero's contractual relationship and the termination thereof with USMDG, including but not limited to alleged claims for overtime compensation brought in the case styled *Nicole Caballero v. US Postal Solutions, Inc.*, filed in United States District Court, Middle District of Florida, Orlando Division, Case No.: 6:17-cv-00319-GAP-KRS (the "Lawsuit"); and

WHEREAS, the Company disputes the allegations in the Lawsuit and asserts that Caballero was never in privity with, and never had any legal relationship with, the Company but, rather, the Company asserts that she was an independent contractor for USMDG, an affiliate of the Company; and

NOW THEREFORE, in consideration of the mutual promises, covenants, and provisions contained in the Agreement, the Parties agree as follows:

## AGREEMENT

1.      Consideration, Including Settlement Payment.  When the Company receives an executed copy of the Agreement, properly executed by Caballero, a W9 executed by Caballero's counsel, and provided that Caballero continues to comply with all of her obligations under the Agreement, and the Court approves this Agreement, the Company agrees to provide Caballero with the following after timely execution:

(a)     Caballero shall receive from the Company a total of Eleven Thousand Dollars ($11,000.00) (the "Settlement Payment"), made payable as follows:

(1) Seven Thousand and 00/100 Dollars ($7,000.00) made payable to "Nicole Caballero," within ten (10) calendar days after the later of the expiration of the revocation period set forth in paragraph 8 below or after Court approval of this Agreement.  The Company or USMDG shall deliver the check to Caballero's attorney. The Company or USMDG will issue to Caballero the appropriate IRS Form 1099 in connection with the payment following the close of the 2017 tax year.

(2) Four Thousand and 00/100 Dollars ($4,000.00) made payable to "Wenzel Fenton Cabassa P.A." within ten (10) calendar days after the later of the expiration of the revocation period set forth in paragraph 8 below or Court approval of this Agreement.  The Company or USMDG will issue to Wenzel

1

DocuSign Envelope ID: 0ZAEDB58-DE8B-408C-8C06-661C61BEE428

Fenton Cabassa P.A. the appropriate IRS Form 1099 in connection with the payment following the close of the 2017 tax year.

(b)    Caballero expressly agrees and represents that any federal, state or local tax or other tax or contribution that may be owed or payable on her portion of the Settlement Payment is the sole responsibility of Caballero, which she agrees to pay.

(c)    Caballero also understands and agrees that, except as specifically set out in the Agreement, no amounts of any nature, including but not limited to, contract amounts, wages, commissions, bonuses, benefits, or other compensation, will become due to Caballero.

(d)    Caballero further acknowledges that each of the claims and causes of action asserted or that could have been asserted in the Lawsuit, are fully and finally settled and resolved, subject to approval by the Court of this agreement and, within three (3) days of Cabellero's receipt of the the the Settlement Payment, she shall file a voluntary dismissal, with prejudice, of the Lawsuit in a form and substance acceptable to the Company.

2.    <u>No Rights to Contractual Relationship or Employment</u>.  Caballero agrees that she will not seek, accept, or otherwise pursue employment or any contractual relationships with the Company or USMDG or their current (as of the date of the Agreement) parent and subsidiary corporations, divisions, affiliates, or partners in the future.

3.    <u>No Admission of Liability</u>.  Caballero, the Company, and USMDG hereby represent and warrant that the Agreement is not in any respect an admission or statement of liability or wrongdoing by either Caballero, the Company, or USMDG.   The Company and USMDG expressly deny any liability of any kind in connection with the Lawsuit, or any other matter arising from Caballero's contract with USMDG and/or the termination thereof.

4.    <u>Release and Waiver of All Claims</u>.  In consideration of the promises made in the Agreement, Caballero hereby for herself, her spouse, if any, children, heirs, and assigns, fully and forever releases, acquits, and covenants not to sue or file any administrative charges or lawsuits against the Company or USMDG, or any of their past, present, and future parent and subsidiary corporations, divisions, affiliates, partners, joint ventures, stockholders, predecessors, successors, assigns, officers, directors, attorneys, agents, representatives, clients, independent contractors, employees, former employees, and any other person, firm or corporation with whom any of them are now or may hereafter be affiliated, and each of them, of and from any and all claims, demands, obligations, losses, causes of action, costs, expenses, attorneys' fees, liabilities, and indemnities of any nature whatsoever, including, but not limited to, any arising out of or in any manner relating to Caballero's contractual relationship with USMDG or the termination thereof, whether based on contract, tort, statute, ordinance or any other legal or equitable theory of recovery whatsoever, including, but not limited to, the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"); 26 U.S.C. § 7434(a); The Labor Management Relations Act of 1947; The Employee Retirement Income Security Act of 1973; The Consolidated Omnibus Budget Reconciliation Act of 1985; The Civil Rights Act of 1866; The Civil Rights Act of 1964; The Civil Rights Act of 1991; The Age Discrimination in Employment Act of 1967; Sections 1981 through 1988 of Title 42 of the United States Code; The Americans with Disabilities Act of 1990; The Fair Labor Standards Act; The Occupational Safety and Health Act; The Family and

2

DocuSign Envelope ID: 07AEDB58-DF8B-400C-8C06-661C61BEE428

Medical Leave Act of 1993; The Florida Civil Rights Act of 1992; The Florida Equal Pay Act, §
725.07, *Florida Statutes;* Equal Pay Act of 1963; The Florida Whistleblower Act, § 448.102, *et
seq., Florida Statutes;* Florida Workers' Compensation Statutes; Florida's Workers'
Compensation Anti-Retaliation Provision, § 440.205, *Florida Statutes;* Florida's Wage Rate
Provision, § 448.07, *Florida Statutes;* Florida's Attorneys' Fees Provision for Successful
Litigants in Suits for Unpaid Wages, § 448.08, *Florida Statutes;* Volusia County Ordinances,
Chapter 36; The Rehabilitation Act of 1973; The Health Maintenance Organization Act of 1973;
The Immigration Reform and Control Act of 1986; Executive Order 11141; Executive Order
11246; Executive Order 11375 and any other federal, state or local law intended to provide for or
protect employee rights or benefits, whether known or unknown, mature or to mature in the
future, which from the beginning of the world to date of the Agreement, Caballero had, now has,
or claims to have against the Company or USMDG. The Company and USMDG likewise fully
and mutually release Caballero from any and all claims arising out of her prior contractual
relationship.

    5.    Confidentiality of Agreement.    Caballero agrees to keep the Agreement
confidential. Therefore, Caballero agrees as follows: Except as otherwise provided herein,
Caballero, her spouse, agents, attorneys, representatives, and assigns hereby agree, covenant, and
warrant that none of them shall directly or indirectly by any means or manner whatsoever
disclose, urge, encourage, cooperate in, cause or permit the disclosure to any person or entity,
including but not limited to, any present or former or future contractor or employee of the
Company or USMDG, the contents or substance of the Agreement or any consideration given or
received hereto; provided, however, that Caballero may make such disclosure to her respective
professional representatives (e.g., attorneys, accountants, auditors, tax preparers), all of whom
will be informed of and agree to be bound by the confidentiality clause, or other such disclosures
required by law. The Company and USMDG also agree to keep the Agreement confidential to
the extent possible. Therefore, the Company and USMDG agree as follows: Except as otherwise
provided herein, the Company's and USMDG's executive and management-level employees
shall not directly or indirectly by any means or manner whatsoever disclose, urge, encourage,
cooperate in, cause or permit the disclosure to any person or entity, including but not limited to,
any present or former or future employee of the Company or USMDG, the contents or substance
of the Agreement or any consideration given or received hereto; provided, however, that the
Company and USMDG may make such disclosure to their respective professional
representatives (e.g., insurers, attorneys, accountants, auditors, tax preparers), all of whom will
be informed of and agree to be bound by the confidentiality clause, or other such disclosures
required by law.

    6.    Governing Law.  The Agreement has been executed in Florida and Florida law
shall be used to interpret the Agreement.

    7.    Entire Agreement.  The Agreement embodies the entire agreement of the Parties
and supersedes any and all other agreements, understandings, negotiations, or discussions, either
oral or in writing, express or implied, between the Parties to the Agreement.  The Parties
acknowledge that no representations, inducements, promises, agreements or warranties, oral or
otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in
the Agreement; that they have not executed the Agreement in reliance on any representation,
inducement, promise, agreements, warranty, fact or circumstances not expressly set forth in the

DocuSign Envelope ID: 07AEDB58-DF8B-400C-8C06-661C61BEF428

Agreement; and that no representation, inducement, promise, agreement or warranty not contained in the Agreement including, but not limited to, any purported settlements, modifications, waivers or terminations of the Agreement, shall be valid or binding, unless executed in writing by all of the Parties to the Agreement.

8. <u>Review Period and Opportunity to Consult with Counsel.</u>  Caballero is aware of her right and opportunity to consult with an attorney before signing this Agreement and acknowledges that her own counsel, the Company, and USMDG have advised her of this right, in writing, and that she has exercised that right and is entering into this Agreement freely and knowingly.  Caballero understands that she has seven (7) calendar days after receipt of this Agreement during which to consider and accept this Agreement by signing and returning it to Defendant's counsel.

9. <u>Binding Nature.</u>  The Agreement, and all the terms and provisions contained herein, shall bind the heirs, personal representatives, successors and assigns of each Party, and inure to the benefit of each Party, its agents, directors, officers, employees, servants, successors, and assigns.

10. <u>Construction.</u>  The Agreement shall not be construed in favor of one Party or against the other.

11. <u>Partial Invalidity.</u>  If any term or provision of the Agreement shall be declared invalid or unenforceable, the remainder of the Agreement or the application of such term or provision other than those which are held invalid or unenforceable, shall not be affected thereby.

12. <u>Headings.</u>  The headings of the paragraphs of the Agreement are for convenience only and shall not affect the construction or interpretation of any of its provisions.

13. <u>Challenge of the Agreement.</u>  Caballero understands that the Agreement is final and binding, and therefore agrees not to challenge its enforceability.

14. <u>Caballero's Understanding.</u>  Caballero has read and understands the Agreement sets forth the entire agreement between the Company, USMDG, and herself.  Caballero acknowledges that she has not relied on any representation or statement, written or oral, not set forth in the document.  The Agreement may only be changed by the Parties in a written document signed by all of the Parties.

15. <u>Non-Disparagement.</u>  Caballero agrees not to directly or indirectly engage or encourage any communications, including but not limited to social media, that disparage or are intended to disparage the Company or USMDG, or any of the Company's or USMDG's operating divisions, subsidiaries and affiliates, predecessors, successors, joint venture partners, insurers or any other related entities or companies. The Company and USMDG also agree not to directly or indirectly engage or encourage any communications, including but not limited to social media that disparage or are intended to disparage Caballero, and Caballero will direct all prospective reference requests to the Company's human resources, who shall provide only Caballero's dates of contractual relationship with USMDG. No comment shall be made, expressly, or impliedly, whether Caballero is eligible for a new contractual relationship or to be hired. In exchange, The Company will provide a neutral job reference upon Caballero's request.

4

16.     Full and Knowing Waiver.  By signing the Agreement, Caballero acknowledges that:

(a)     She, with the assistance of her attorney, has carefully read and fully understands the Agreement;

(b)     Caballero has consulted with her attorney before signing the Agreement;

(c)     Caballero agrees to the terms knowingly, voluntarily and without intimidation, coercion or pressure; and

(d)     Caballero waives any time periods otherwise required to elapse or expire as a condition precedent to enforceability of the agreement.

18.     Amendments.  No addition, modification, amendment or waiver of any part of the Agreement shall be binding or enforceable unless executed in writing by all Parties hereto.

17.     Voluntary and Knowing.  The Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Parties hereto.

18.     Counterparts.  The Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused the Agreement to be executed as of the dates set forth below.

Dated the _____ day of April, 2017.
4/10/2017

By:_____
    Nicole Caballero

Dated the 7 day of April, 2017.

US Postal Solutions, Inc.

By:_____
Name: Craig S. Meddin
Its:    President

US Mail Delivery Group, Inc.

By:_____
Name: Craig S. Meddin
Its:    President

5